IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL L. JOHNSON | \* |
| v. | \* Civil Case No. 14-78-JFM |
| CAROLYN W. COLVIN | \* |

## MEMORANDUM OPINION

Pending before the Court are the parties' cross-motions for summary judgment. (Docket Nos. 8 and 10). Both parties have filed briefs in support of their motions. (Docket Nos. 9 and 11). After careful consideration of each of those submissions, I am granting Defendant's Motion for Summary Judgment (Docket No. 10) and denying Plaintiff's Motion for Summary Judgment (Docket No. 8).

### I. BACKGROUND

On May 2, 2012, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). (R. 177-87). In her applications, she alleged a disability onset date of October 15, 2010. *Id.* An Administrative Law Judge ("ALJ") held hearings on April 15, 2013, and August 19, 2013.[1] (R. 26-67). Plaintiff appeared at the hearings with counsel and testified on her own behalf. *Id.* In a decision dated August 23, 2013, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, and that Plaintiff was therefore not disabled under the Act. (R. 15-25). The Appeals Council denied Plaintiff's request for review, (R. 1-5), making the ALJ's opinion the final, reviewable decision of the Commissioner. Plaintiff then filed this action. (Docket No. 1).

---

[1] The initial hearing was continued because Plaintiff's counsel had not been notified that the ALJ intended to hear testimony from a medical expert. (R. 33).

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

In Social Security appeals, this Court determines whether substantial evidence exists in the record to support the Commissioner's decision. *See Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (*quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). This Court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *See Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998). If the ALJ's findings of fact are supported by substantial evidence, this Court must uphold the ALJ's decision even if this Court would have decided the factual inquiry differently. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). This Court must review the record as a whole in determining whether the ALJ's findings are supported by substantial evidence. *See* 5 U.S.C. § 706.

To be eligible for Social Security benefits, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

Each ALJ employs a five-step sequential analysis when evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his

past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the burden through the first four steps of the sequential evaluation, including the burden of establishing an inability to perform past relevant work. *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). If the claimant fulfills this burden, the Commissioner bears the burden of proof at step five to show that the claimant is capable of other substantial gainful activity. *Id.*

After reviewing the entire record, this Court may affirm, modify, or reverse the ALJ's decision. *See Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## B. WHETHER THE ALJ ERRED IN EVALUATING PLAINTIFF'S MENTAL LIMITATIONS

Plaintiff generally contends that the ALJ erred in evaluating her mental impairments. Pl. Br. 13-19. First, she contends that the ALJ should have assigned more than "partial weight" to the opinion rendered by the consultative examiner, Dr. Zelazowski. *See* (R. 23). Dr. Zelazowski determined, in relevant part, that Plaintiff suffered from "marked limitations" in her ability to interact appropriately with the public and coworkers. (R. 640-41). The ALJ rejected that view, noting that Plaintiff's mental status examination was "generally within normal limits," that Plaintiff was cooperative and friendly during the examination, and that Plaintiff herself reported no difficulty getting along with others. (R. 23). Additionally, the ALJ noted that Plaintiff "has never been treated for her anxiety/depression by psychiatric professionals." (R. 23). Accordingly, the ALJ concluded that Plaintiff's activities of daily living contradict the limitations suggested by Dr. Zelazowski. *Id.* The ALJ thus assigned a RFC assessment providing for "no contact with the public and occasional contact with co-employees and supervisors." (R. 20).

3

Plaintiff essentially suggests that the ALJ erred in relying on her relatively robust activities of daily living, particularly suggesting that Plaintiff has extensive help from her mother and husband in caring for her small children. Pl. Br. 14-15. However, that suggestion is somewhat belied by the record, in which Plaintiff indicated that she was unable to get shoulder surgery because she had no one to help her at home with child care. (R. 420). Moreover, as noted above, this Court is precluded from re-weighing the record evidence. *See Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998). The ALJ provided substantial evidence to support his conclusion regarding Dr. Zelazowski's opinion, specifically Plaintiff's activities of daily living, her normal interactions with her health care providers, and her lack of mental health treatment through the date of the ALJ's opinion. (R. 19, 21-24).

Plaintiff next contends that the Social Security Administration's Program Operations Manual System (POMS) DI 25020.010 requires that a claimant be able to "make simple work-related decisions" in order to perform unskilled work. Pl. Br. 16-17. POMS, however, "lack the force of law and create no judicially-enforceable rights." *Bordes v. Commissioner of Social Sec.*, 235 F. App'x 853, 858 (3d Cir. 2007) (citations omitted); *see also Schweiker v. Hansen*, 450 U.S. 785 (1981) (Social Security Administration Claims Manual "has no legal force, and it does not bind the SSA"). Moreover, even if POMS were binding, ALJs routinely find a particular claimant to have specific limitations that might reduce the overall range of "unskilled work" that the claimant could perform. If the ALJ has substantial evidence to believe that jobs would exist for a particular claimant even with the reduced range of unskilled work, then the ALJ's decision is adequately supported and must be affirmed.

Finally, Plaintiff also cites a record from her primary care provider, physician's assistant Sara Shellhammer, on July 22, 2013, about a month before the ALJ's opinion, in which she reports increased stress and anxiety following a miscarriage. (R. 644-68). Following the

4

appointment, Ms. Shellhammer refers Plaintiff for a psychological evaluation. (R. 647). Ms. Shellhammer's referral, which was not accompanied by any sense of urgency or any prescription for an increase in psychiatric medication, fully comports with the recommendation of Dr. Zelazowski, who opined that improvement in Plaintiff's mental condition would likely occur with appropriate medications and psychotherapy or counseling for three or four months. (R. 637). The conclusion is also not only consistent with, but also more restrictive than, the testimony of the medical expert who testified at Plaintiff's hearing. *See,* (R. 56) ("I feel that she has an ongoing problem with depression but I would not rate it as severe, certainly not enough to record a hospitalization and she is able according to the testimony to function adequately in the caring of her child."). Thus, this Court finds no error in the ALJ's evaluation of Plaintiff's mental impairment.

### C. WHETHER THE ALJ ERRED IN EVALUATING PLAINTIFF'S PHYSICAL IMPAIRMENTS

Plaintiff also submits that the ALJ mistakenly evaluated her physical impairments. Pl. Br. 19-24. First, Plaintiff argues that her diabetic neuropathy should have been deemed a severe impairment at step two. It is worth noting that the ALJ did determine Plaintiff's diabetes and her "multiple arthralgias" to be severe impairments. (R. 17). The ALJ fully discussed the record and explained that while the consultative examiner had reported symptoms consistent with diabetic neuropathy, Plaintiff's primary treating provider, Ms. Shellhammer, had ruled out diabetic neuropathy based upon a foot biopsy performed earlier. (R. 22). The ALJ further noted that no EMG studies had confirmed the diagnosis. *Id.* Regardless of whether Plaintiff is deemed to have "neuropathy" or not, it cannot be said that the ALJ ignored Plaintiff's pain and the resulting impairments Plaintiff experiences, given the RFC assessment limiting Plaintiff to a

reduced range of sedentary work with no postural activities.[2] Thus, any error would be harmless.

Plaintiff next contends that the limitation precluding her from "lifting or reaching above shoulder level" did not sufficiently accommodate her shoulder impairment. (R. 22-23). However, there is no evidence that her shoulder impairment would require any more significant restriction. *See* (R. 49) (Plaintiff testimony that, "I have trouble with my right shoulder when I reach above my head."); (R. 623-25) (notes from consultative examiner that Plaintiff feels she has to "baby" her shoulder to reduce risk of dislocation" but also noting "no evidence for chronic dislocation"); (R. 558) (orthopedist examination noting "no evidence of dislocation," diagnosing "diffuse ligamentus laxity" and "a multidirectional instability pattern" but giving Plaintiff the options of surgery, "living with this," physical therapy, or medications.").

Finally, Plaintiff submits that the ALJ's hypothetical question was altered to try to find sufficient jobs, given that the first hypothetical the ALJ posed to the VE resulted in only one representative job. (R. 58). However, according to the VE's testimony, that single job, surveillance system monitor, had 16,760 positions in the national economy. (Tr. 58). *See, Wilkinson v. Comm'r, Social Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("The ALJ satisfied her burden of production at this step when she identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform."). The Third Circuit has concluded that the existence of just 200 jobs in the regional economy suffices to establish the existence of work existing in significant numbers in the national economy. *See Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987). Accordingly, the ALJ had no incentive to alter his hypothetical simply to produce a response with additional jobs. Moreover, Plaintiff also contends that the hypothetical should have included that she would be off task ten percent of the

---

[2] The ALJ's opinion mistakenly states, in the RFC assessment, "no postural limitations except climbing stairs occasionally." (R. 20). It is clear, from the ALJ's question to the VE at the hearing, that the RFC assessment should have read "no postural activities" instead of "no postural limitations." (R. 57-58). However, any error is harmless because the VE's testimony was accurate.

workday and would have frequent absenteeism. However, there is no support in the record for those assertions, and the ALJ's hypothetical need only reflect impairments that are substantiated by the record. *See Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987). Remand is therefore unwarranted.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.


Dated: November 10, 2014            /s/ *J. Frederick Motz*
                                                  J. Frederick Motz
                                                  United States District Judge